## UNITED STATES  DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**HERBERT SMITH**                                    **CIVIL ACTION**

**versus**                                           **NO. 05-2847**

**JAMES LEBLANC, WARDEN**                            **SECTION: "F" (3)**

## REPORT AND RECOMMENDATION

    This matter was referred to this United States Magistrate Judge for the purpose of conducting a hearing, including an evidentiary hearing, if necessary, and submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Courts.  Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  <u>See</u> 28 U.S.C. § 2254(e)(2).[1]  Therefore, for all of the following reasons, **IT IS RECOMMENDED** that the petition be **DISMISSED WITH PREJUDICE**.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is now a statutorily mandated determination.  According to Section 2254(e)(2), the district court generally may hold an evidentiary hearing only when the petitioner has shown that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered through the exercise of due diligence (28 U.S.C. § 2254(e)(2)(A)(ii)); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner (28 U.S.C. § 2254(e)(2)(B)).

Petitioner, Herbert Smith, is a state prisoner incarcerated at the Dixon Correctional Institute, Jackson, Louisiana.   On September 9, 1999, he was convicted of aggravated battery in violation of La.Rev.Stat.Ann. § 14:34.[2]  On November 23, 1999, he was found to be a third offender and was sentenced as such to a term of life imprisonment.[3]  On December 20, 2000, the Louisiana Fourth Circuit Court of Appeal affirmed his conviction and sentence.[4]  He then filed with the Louisiana Supreme Court a writ application[5] which was denied on April 12, 2002.[6]

At unknown time after his conviction, petitioner filed with the state district court a motion to correct an illegal sentence which was denied on October 4, 2001.[7]

On or about April 29, 2002, petitioner filed with the state district court an application for post-conviction relief.[8]  That application was denied on May 13, 2002.[9]  He next filed with the Louisiana Fourth Circuit Court of Appeal an application for a supervisory writ which was denied

---

[2] State Rec., Vol. I of III, minute entry dated September 9, 1999.

[3] State Rec., Vol. II of III, transcript of November 23, 1999, p. 8; Supplemental State Rec., Vol. I of I, minute entry dated November 23, 1999.

[4] State v. Smith, 777 So.2d 584 (La. App. 4th Cir. 2000) (No. 2000-KA-0523); State Rec., Vol. I of III.

[5] State Rec., Vol. III of III.

[6] State v. Smith, 812 So.2d 663 (La. 2002) (No. 2001-KO-0364); State Rec., Vol. III of III.

[7] State Rec., Vol. III of III, Order dated October 4, 2001.

[8] State Rec., Vol. II of III.

[9] State Rec., Vol. II of III, minute entry dated May 13, 2002.

on August 6, 2002.[10]  He then filed with the Louisiana Supreme Court an application for a writ of

certiorari[11] which was denied on February 13, 2004.[12]

On August 20, 2002, petitioner filed with the state district court another application

for post-conviction relief.[13]  When he received no ruling on that application, he filed an application

for a writ of mandamus with the Louisiana Fourth Circuit Court of Appeal.[14]  The intermediate

appellate court treated that filing as an application for a supervisory writ and found that petitioner

was not entitled to relief.[15]  He then filed with the Louisiana Supreme Court a related writ

application[16] which was denied on January 9, 2006.[17]

---

[10]  State v. Smith, No. 2002-K-1093 (La. App. 4th Cir. Aug. 6, 2002) (unpublished); State Rec., Vol. III of III.

[11]  State Rec., Vol. III of III.

[12]  State ex rel. Smith v. State, 867 So.2d 679 (La. 2004) (No. 2003-KH-0377); State Rec., Vol. III of III.

[13]  Supplemental State Rec., Vol. I of I.

[14]  State Rec., Vol. II of III.  That was apparently the second application for a writ of mandamus petitioner filed with respect to that post-conviction application.  The Louisiana Fourth Circuit Court of Appeal denied the first mandamus application because petitioner failed to attach a copy of his district court filing.  State v. Smith, No. 2003-K-2176 (La. App. 4th Cir. Feb. 9, 2004) (unpublished), writ denied, 897 So.2d 593 (La. 2005) (No. 2004-KH-1223); State Rec., Vol. III of III.

[15]  State v. Smith, No. 2004-K-1937 (La. App. 4th Cir. Dec. 10, 2004) (unpublished); State Rec., Vol. II of III.

[16]  State Rec., Vol. III of III.

[17]  State ex rel. Smith v. State, 918 So.2d 1024 (La. 2006) (No. 2005-KH-0431).

On June 30, 2005, petitioner filed this federal application for *habeas corpus* relief.[18] In that application, petitioner claimed that his trial counsel was ineffective. He was subsequently granted permission to amend his federal application to include claims that he was wrongly found to be a third offender and that his sentence was excessive.[19]

The state concedes that petitioner's federal application is timely filed[20] and does not argue that he failed to exhaust his state court remedies.[21] Accordingly, this Court will address the merits of petitioner's claims.

<u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000).

---

[18]  Rec. Doc. 1.

[19]  <u>See</u> Rec. Docs. 5, 12, and 13.

[20]  Rec. Doc. 22, p. 1.

[21]  Even if there were an exhaustion problem, federal law "allows a federal court, in its discretion, to *deny habeas relief* on the merits, regardless of whether the applicant has exhausted state remedies" and whether exhaustion is waived by the state. <u>Jones v. Jones</u>, 163 F.3d 285, 299 (5th Cir. 1998) (emphasis in original); 28 U.S.C. § 2254(b)(2).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).   The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685, 694 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1); Hill, 210 F.3d at 485.

<u>Facts</u>

On direct appeal, the Louisiana Fourth Circuit Court of Appeal summarized the facts of this case as follows:

> Terry Smith, the victim and the defendant's nephew, testified that on July 7, 1999, he and the defendant lived with the victim's aunt and uncle on Dorgenois Street.  On that afternoon, he and the defendant argued over money that the defendant allegedly owed to

- 5 -

him.  At that point, "Noo" and Luther, two of the victim's friends, approached the victim and the defendant and offered to sell the defendant drugs.  The defendant removed five dollars from his pocket, and "Noo" and Luther snatched it and escaped on a bike.  The victim and the defendant pursued, but were unable to catch them. The victim then demanded that the defendant pay him the five dollars that he allegedly owed to him.  The two continued to argue over the money, and the confrontation soon escalated into a fistfight.  The victim took off his shirt and demanded that the defendant pay him his money.  The victim swung at the defendant, they each threw a few punches, and then the defendant pulled a box cutter from his pocket, and seriously cut the victim's mid-section.  At that point, the victim abandoned the fight and sought help from his friend, Amanda Davis, who called an ambulance and applied a towel to the wound.  When the ambulance failed to arrive, a friend drove the victim to University Hospital.  The doctors at University Hospital told him he needed major surgery, and transferred him by ambulance to Charity Hospital, where he remained for three days following surgery.

Dr. Brett Siegrist, a general surgery physician at Charity Hospital, attended the victim upon arrival at the hospital. Dr. Siegrist described a large slash wound just below the victim's ribs on his left side.  The doctor noted that every time the victim would yell or cough, some of his intestines would protrude from the gash.  The victim underwent an exploratory laparotomy to rule out damage to his abdominal organs.  The doctor used internal sutures and approximately thirty external staples to close the wound.

On July 7, 1999, Detective Tim Allen responded to a call reporting a stabbing in the 500 block of South Dorgenois.  The detective did not see the victim upon arriving at the scene but spoke with a witness, Amanda Davis.  Based on information developed at the scene, he arrested the defendant.  Det. Allen read the defendant his rights, which the defendant acknowledged that he understood. The defendant told Det. Allen that he had acted in self-defense because the victim armed himself with a broken bottle.  He also said that he threw the box cutter in some weeds behind his apartment building, however, a search of the area did not produce the cutter. Det. Allen searched the trashcan into which the defendant said the victim threw the broken bottle but did not find a bottle.  The defendant was transported to the police station where he gave a taped statement.

In his statement, the defendant recounted that he and the victim had gotten into an argument over money.  While they were

arguing, two of the victim's friends grabbed money from him.  After that, his argument with the victim escalated into a fistfight.  When the victim armed himself with a broken bottle, and began to swing at him, the defendant grabbed a box cutter from his pocket, and cut the victim once in the mid-section.  The victim dropped the broken bottle in a nearby trashcan, and asked a friend to call an ambulance.  The defendant threw the box cutter into an adjacent lot.

Amanda Davis testified that she knows both the victim and defendant, and that on the day of the incident, she heard the pair arguing in the alley.  She saw the victim backing out of the alley as he continued to argue with the defendant.  When the defendant continued his advance toward the victim, the victim struck the defendant once across his face.  The defendant swung at the victim three times with an object he held in his hand.  On the third swing, the defendant cut the victim, and she could see the victim's intestines protruding from a wound in his mid-section.  She ran to assist the victim and called an ambulance.  The victim was unarmed.  She did not see the incident between the defendant and "Noo" and Luther.[22]

<u>Ineffective Assistance of Counsel</u>

Petitioner claims that his counsel was ineffective.  When these claims were presented in the state post-conviction proceedings, they were rejected on the ground that petitioner had not demonstrated that he was entitled to relief.[23]

In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the United States Supreme Court established a two-prong test for evaluating claims of ineffective assistance of counsel.  A petitioner seeking relief must demonstrate that counsel's performance was deficient *and* that the deficient performance prejudiced his defense.  <u>See id</u>. at 697.

---

[22] <u>State v. Smith</u>, 777 So.2d 584, 585-86 (La. App. 4th Cir. 2000) (No. 2000-KA-0523); State Rec., Vol. I of III.

[23] <u>State v. Smith</u>, No. 2004-K-1937 (La. App. 4th Cir. Dec. 10, 2004) (unpublished), <u>writ denied</u>, 918 So.2d 1024 (La. 2006) (No. 2005-KH-0431); State Rec., Vol. III of III.

To prevail on the deficiency prong, petitioner must demonstrate that counsel's conduct fails to meet the constitutional minimum guaranteed by the Sixth Amendment.  See Styron v. Johnson, 262 F.3d 438, 450 (5th Cir. 2001).  "Counsel's performance is deficient if it falls below an objective standard of reasonableness."  Little v. Johnson, 162 F.3d 855, 860 (5th Cir. 1998).  Analysis of counsel's performance must take into account the reasonableness of counsel's actions in light of all the circumstances.  See Strickland, 466 U.S. at 689.  "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'"  Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (quoting Strickland, 466 U.S. at 690).  Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation.  See Crockett v. McCotter, 796 F.2d 787, 791 (5th Cir. 1986); Mattheson v. King, 751 F.2d 1432, 1441 (5th Cir. 1985).

In order to prove prejudice with respect to trial counsel, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694.  In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.  In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial."  Crockett, 796 F.2d at 793.

Petitioner bears the burden of proof when asserting an ineffective assistance of counsel claim.  Petitioner "must demonstrate, by a preponderance of the evidence, that his counsel was ineffective."  Jernigan v. Collins, 980 F.2d 292, 296 (5th Cir. 1993); see also Clark v. Johnson,

- 8 -

227 F.3d 273, 284 (5th Cir. 2000).  If a court finds that petitioner has made an insufficient showing as to either of the two prongs of inquiry, i.e. deficient performance or actual prejudice, it may dispose of the claim without addressing the other prong.  Strickland, 466 U.S. at 697.

A claim of ineffective assistance of counsel is a mixed question of law and fact. Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Therefore, this Court must defer to the state court on such claims unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Petitioner claims that counsel was ineffective in failing to perform an adequate investigation of the case which would have allegedly revealed an eyewitness, Ronald Rudolph, who could have testified in support of petitioner's contention that he acted in self defense.[24]

To the extent that petitioner is contending that counsel failed to perform an adequate investigation, his claim falls woefully short.  A petitioner asserting a claim for inadequate investigation bears the burden to provide *factual support* for his allegations as to what further investigation would have revealed.  See Moawad v. Johnson, 143 F.3d 942, 948 (5th Cir. 1998).  He

---

[24]   In his argument, petitioner also contends that counsel should have impeached Amanda Davis' testimony that she witnessed the altercation.  To the extent that petitioner intends that contention as a separate claim, it has no merit.  Petitioner's argument is based on his allegation that the victim's testimony indicates that Davis was inside of her house at the time of the altercation.  However, the victim never expressly testified that Davis was inside the house *at that time* and one cannot fairly draw that inference from the victim's testimony.  To the contrary, the victim expressly testified that Davis was outside at the time of the altercation.  State Rec., Vol. I of III, transcript of September 9, 1999, p. 22.

has provided no factual support, such as an affidavit from Rudolph, for the contention that Rudolph could support a claim of self defense.

The related claim that counsel was ineffective in failing to secure Rudolph's presence at trial similarly fails. "[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what the witness would have testified are largely speculative." Evans v. Cockrell, 285 F.3d 370, 377 (5th Cir. 2002) (citing Sayre v. Anderson, 238 F.3d 631, 635-36 (5th Cir. 2001)). To show the prejudice required to support an ineffective assistance claim premised on the failure to call a witness, a petitioner "'must show not only that [the] testimony would have been favorable, but also that the witness would have testified at trial.'" Evans, 285 F.3d at 377 (quoting Alexander v. McCotter, 775 F.2d 595, 602 (5th Cir. 1985)). Petitioner furnished neither the state courts nor this Court any evidence in support of his bald assertions regarding Rudolph. Petitioner has not provided an affidavit from Rudolph or any other corroboration that he would have testified in a manner consistent with petitioner's version of the facts or, for that matter, that he would have testified at trial at all. Petitioner has, therefore, failed to establish either that counsel's performance was deficient or that prejudice resulted from the failure to interview or call Rudolph to testify.

Accordingly, petitioner has failed to demonstrate that the state court's decision rejecting his ineffective assistance of counsel claims was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. Applying the AEDPA's deferential standard, this Court likewise rejects those claims.

<u>Multiple Offender Adjudication</u>

Petitioner next claims that he was wrongly found to be a third offender.  On direct

appeal, the Louisiana Fourth Circuit Court of Appeal rejected that claim, holding:

> In a second assignment, the defendant argues that the trial court erred in adjudicating him a third felony offender.  More particularly, he claims the State produced insufficient evidence of his identity.
>
> The State multiple billed the defendant on the basis of a 1998 conviction for possession of cocaine and a 1997 conviction for simple burglary of an automobile.
>
> La.R.S. 15:529.1(D)(1)(b) states that the district attorney has the burden of proving beyond a reasonable doubt any issue of fact, and that the presumption of regularity of judgment shall be sufficient to meet the original burden of proof.  The State must establish the prior felony and that the defendant was the same person convicted of that felony.  <u>State v. Neville</u>, 96-0137 (La.App. 4 Cir. 5/21/97), 695 So.2d 534, 539, <u>writ denied</u>, 97-1637 (La. 12/12/97), 704 So.2d 1180. There are various methods available to prove that the defendant is the same person convicted of the prior felony offense, such as testimony from witnesses, expert opinion regarding the fingerprints of the defendant when compared with those in the prior record, or photographs in the duly authenticated record.  <u>State v. Henry</u>, 96-1280 (La.App. 4 Cir. 3/11/98), 709 So.2d 322, 326, <u>writ denied</u>, 1999-2642 (La. 3/24/00), 758 So.2d 143.
>
> At the multiple bill hearing, the State presented the testimony of Officer Terry Bunch, a custodian of arrest registers for the NOPD, and expert in the taking and analysis of fingerprints.  Officer Bunch testified that he took the defendant's prints prior to the multiple bill hearing, and identified State's exhibit 1 as the card containing those fingerprints.  He then compared the prints on State's exhibit 1 to the fingerprints on State's exhibit 5, the certified copy of arrest register for the defendant's 1997 conviction for simple burglary of an automobile.  Officer Bunch concluded that the fingerprints on the arrest register matched the prints on State's exhibit 1.  Next, the State offered exhibit 2, a certified copy of the 1998 bill of information charging the defendant with possession of cocaine.  Although the bill of information contained fingerprints, Officer Bunch testified that the fingerprints were not suitable for identification. However, comparing the vital information on State's exhibit 3 arrest register with State's

exhibit 5 arrest register, the information was identical as to the defendant's name, date of birth, B of I number, FBI number and FPC number. Hence, the State was able to prove the defendant's identity as to the possession of cocaine conviction.

In State v. Bell, 97-1134 (La.App. 5 Cir. 2/25/98), 709 So.2d 921, 926, writ denied, 98-0792 (La. 9/16/98), 721 So.2d 477, the Fifth Circuit held that testimony comparing a defendant's current fingerprints with fingerprints found on prior arrest records was sufficient to prove that the defendant was the person convicted of the prior offenses. By comparing defendant's in-court fingerprints with the fingerprints on State's exhibit 5, the State proved the defendant's identity as to the simple burglary of an automobile.

As to proof of the defendant's identity relative to the possession of cocaine conviction, this court has analyzed facts similar to those presented here to determine whether the State proved beyond a reasonable doubt that a defendant was convicted of a predicate offense. In State v. Anderson, 99-1407 (La.App. 4 Cir. 1/26/00), 753 So.2d 321, 326, the fingerprints on the bill of information of a predicate conviction were not suitable for identification; however, the fingerprints on the arrest register matched those of the defendant. The State was able to match the arrest register with the certified copy of the predicate conviction through the defendant's name, date of birth, date of offense, case number and complainant's name. In addition, defendant's name, date of birth, social security and bureau of identification number were the same as the person who pled guilty to the predicate conviction. The court held that the State met its burden in proving that the appellant was the same person convicted of that predicate offense.

In this case the State proved the defendant's identity as the person who committed the predicate offenses.

This assignment is without merit.[25]

Regarding the sufficiency of evidence required under state law to support a habitual

offender adjudication, the Louisiana Supreme Court has held:

> To obtain a multiple offender conviction, the State is required to establish both the prior felony conviction and that the defendant is the same person convicted of that felony. In attempting to do so, the

---

[25] State v. Smith, 777 So.2d 588-89; State Rec., Vol. I of III.

> State may present:  (1) testimony from witnesses; (2) expert opinion regarding the fingerprints of the defendant when compared with those in the prior record; (3) photographs in the duly authenticated record; or (4) evidence of identical divers license number, sex, race and date of birth.

State v. Payton, 801 So.2d 1127, 1130 (La. 2002) (internal quotation marks and citations omitted).

In the instant case, the parties stipulated that Officer Terry Bunch was an expert in the comparison and identification of latent fingerprints.[26]  In connection with Bunch's testimony, the prosecution introduced Exhibit 1, a card with the known fingerprints of petitioner.[27]  Bunch then testified that the fingerprints on Exhibit 1 matched the fingerprints on Exhibit 3, the arrest register relating to the records for the conviction for possession of cocaine.[28]  Bunch further testified that the fingerprints on Exhibit 1 matched the fingerprints on Exhibit 5, the arrest register relating to the records for the conviction of simple burglary of an automobile.[29]

To the extent that petitioner is arguing that the proof of identity was insufficient because the only usable fingerprints from the prior convictions were the ones on the arrest registers, he is clearly wrong.  Louisiana courts have long held that identity can be proven by establishing that the defendant's fingerprints match those on an arrest register and then linking that arrest register to conviction records.  State v. Williams, 788 So.2d 515, 530 (La. App. 4th Cir. 2001); see also State v. Payton, 810 So.2d 1127, 1130-32 (La. 2002); State v. Smith, 913 So.2d 836, 841 (La. App. 4th Cir.

---

[26]  State Rec., Vol. I of III, transcript of November 23, 1999, p. 3.

[27]  State Rec., Vol. I of III, transcript of November 23, 1999, p. 4, lines 4-13.

[28]  State Rec., Vol. I of III, transcript of November 23, 1999, pp. 4-5.

[29]  State Rec., Vol. I of III, transcript of November 23, 1999, p. 6.

2005).  Any contention that the fingerprints must also appear on the bills of information relating to

the prior convictions is simply wrong.  Payton, 810 So.2d at 1132; Williams, 788 So.2d at 530-31.

 Petitioner also claims that he was never actually convicted of possession of cocaine,

noting that he was originally arrested for only possession of drug paraphernalia.  The conviction

records disprove that contention.  Although the arrest register indicates that possession of drug

paraphernalia was the *original* charge at the time of arrest, the bill of information reflects that the

district attorney exercised his discretion to ultimately charge petitioner with possession of cocaine.

See State v. Craig, 747 So.2d 604, 606 (La. App. 2nd Cir. 1999) ("The district attorney has the sole

discretion to choose under which law he will prosecute."); see also La.C.Cr.P. art. 61 ("Subject to

the supervision of the attorney general, as provided in Article 62, the district attorney has entire

charge and control of every criminal prosecution instituted or pending in his district, and determines

whom, when, and how he shall prosecute.").  The guilty plea form, court docket master, and minute

entry relating to that conviction all reflect that petitioner pled guilty to possession of cocaine as

charged in the bill of information.[30]

 In summary, the prosecution proved the existence of the convictions for possession

of cocaine and for simple burglary of an automobile.  Each of those conviction records included an

arrest register bearing the criminal defendant's fingerprints.  In each case, the fingerprints of the

---

[30]   State Rec., Vol. I of III.  Petitioner also notes that the guilty plea form in that case noted:  "It
is agreed the defendant not to be charged as a multiple offender."  However, that notation simply
indicated that, as part of the plea agreement, petitioner would not be charged as a habitual offender
*in that case*.  The notation clearly was not meant as an indication that the resulting conviction could
not later serve as a predicate conviction if petitioner was again convicted and charged as a habitual
offender in a subsequent case.

criminal defendant matched petitioner's fingerprints.  Accordingly, the evidence was sufficient to

establish that petitioner was in fact a third offender as charged.

Excessive Sentence

Petitioner claims that his life sentence is excessive.  On direct appeal, the Louisiana

Fourth Circuit Court of Appeal rejected that claim, holding:

> In a third assignment, the defendant contends his life sentence as a third felony offender is constitutionally excessive.
>
> Defendant was sentenced to life imprisonment pursuant to La.R.S. 15:529.1(A)(1)(b)(ii) which provides:
>
>> (ii) If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
>
> The defendant's third conviction was for aggravated battery, a crime of violence as defined by La.R.S. 14:2(13).  Furthermore, one of his predicate convictions was for possession of cocaine, a violation of the Uniform Controlled Dangerous Substances Law.  Therefore, defendant received the mandatory life sentence as a third felony habitual offender under La.R.S. 15:529.1(A)(1)(b)(ii).
>
> Even though a sentence under the Habitual Offender Law is the minimum provided by that statute, the sentence may still be unconstitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, or is nothing more than the purposeful imposition of pain and suffering and is grossly out of proportion to the severity of the crime.  State v. Johnson, 97-1906, pp. 6-7 (La. 3/4/98), 709 So.2d 672, 677; State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993).  However, the entire Habitual Offender Law has been held constitutional, and, thus, the minimum sentences it imposes upon habitual offenders are also presumed to be constitutional.  Johnson, 97-1906, at pp. 5-6, 709 So.2d at 675; see

- 15 -

also <u>State v. Young</u>, 94-1636, p. 5 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 527, <u>writ denied</u>, 95-3010 (La. 3/22/96), 669 So.2d 1223. There must be substantial evidence to rebut the presumption of constitutionality. <u>State v. Francis</u>, 96-2389, p. 7 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, 461, <u>writ denied</u>, 98-2360 (La. 2/5/99), 737 So.2d 741.

Recently, the Louisiana Supreme Court in <u>State v. Lindsey</u>, 99-3256 (La. 10/17/00), 770 So.2d 339, mandated that the guidelines set forth in <u>State v. Johnson</u>, 97-1906 (La. 3/4/98), 709 So.2d 672, govern the review of mandatory minimum sentencing under an excessive sentence claim.

In <u>Lindsey</u>, the Court stated:

> "[a] court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut [the] presumption of constitutionality" and emphasized that "departures downward from the minimum sentence under the Habitual Offender Law should occur only in rare situations."

<u>Id</u>. at p. 5, 770 So.2d at 343. (quoting <u>Johnson</u>, 709 So.2d at 676-77).

The Court further stated that in departing from the mandatory minimum sentence, the court should examine whether the defendant has clearly and convincingly shown there are exceptional circumstances to warrant the departure:

> To rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that:

>> [he] is exceptional, which in this context means that because of unusual circumstances this defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case.

Id., (quoting Johnson, 709 So.2d at 676 (citing State v. Young, 94-1636 at pp. 5-6 (La.App. 4 Cir. 10/26/95), 663 So.2d 525, 529 (Plotkin, J., concurrence))).

> [I]t is not the role of the sentencing court to question the wisdom of the Legislature in requiring enhanced punishments for multiple offenders.  Instead, the sentencing court is only allowed to determine whether the particular defendant before it has proven that the mandatory minimum sentence is so excessive in his case that it violates our constitution.

Johnson, 709 So.2d at 677.

Under the Habitual Offender Law, a defendant with more than one felony conviction is treated as a recidivist who is to be punished for the instant crime in light of his continuing disregard for the law. Such a multiple offender is subjected to a longer sentence because he continues to break the law.

The only arguments the defendant makes for claiming that his sentence is excessive is that the dispute was between him and a younger family member, both under the influence of alcohol.

A review of the record reveals that defendant's criminal record consists of fifteen felony arrests, with four convictions; seventeen misdemeanor arrests, with five convictions; and thirteen municipal arrests, with four convictions.  In 1975, the defendant was convicted of possession of stolen property and possession of a sawed-off shotgun, for which he received sentences of two years in the Department of Corrections and four years in a federal penitentiary, respectively.  In 1996, he was convicted of simple burglary and sentenced to two years in the Department of Corrections.

The defendant is classified as a career criminal.  Previous sentences have not deterred him from pursuing a life of crime.  He is a forty-nine year old fourth offender with a very limited work history of only two recorded employers.  At least three of his arrests were for drug offenses and four of his convictions were for illegally carrying a weapon.

Considering the defendant's extensive criminal record and propensity for crimes of violence, he fits the profile of the recidivist the Habitual Offender Law was enacted to contain.  Defendant has not presented evidence to support a downward departure from the

mandatory sentence. His life sentence as a third felony offender is not excessive.

        This assignment is without merit.[31]

To the extent petitioner is arguing that his sentence is excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

Further, to the extent that petitioner is claiming that his sentence is excessive under the Eighth Amendment of the United States Constitution, his claim is without merit. In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir. 1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id. (quotation marks omitted).

---

[31] State v. Smith, 777 So.2d 589-91; State Rec., Vol. I of III.

Interpreting <u>Solem</u> in light of intervening precedent, the United States Fifth Circuit Court of Appeals has set forth the framework to be used when analyzing a claim that a sentence is excessive:

> [W]e will initially make a threshold comparison of the gravity of [petitioner's] offenses against the severity of his sentence. Only if we infer that the sentence is grossly disproportionate to the offense will we then ... compare the sentence received to (1) sentences for similar crimes in the same jurisdiction and (2) sentences for the same crime in other jurisdictions.

<u>McGruder v. Puckett</u>, 954 F.2d 313, 316 (5th Cir. 1992).  Moreover, when evaluating the excessiveness of a sentence imposed under a habitual offender statute, a court must be mindful that the "sentence is imposed to reflect the seriousness of [petitioner's] most recent offense, not as it stands alone, but in the light of his prior offenses." <u>Id</u>.

The Fifth Circuit has noted that <u>Rummel v. Estelle</u>, 445 U.S. 263 (1980), "establishes a benchmark for disproportionate punishment under the Eighth Amendment." <u>Gonzales</u>, 121 F.3d at 943.  In <u>Rummel</u>, the Supreme Court upheld a petitioner's sentence to life imprisonment for obtaining $120.75 under false pretenses.  The sentence was imposed under a Texas recidivist statute and took into account petitioner's prior convictions for fraudulent use of a credit card and passing a forged check.  The Fifth Circuit observed:

> We acknowledge that the distinction between constitutional sentences and grossly disproportionate punishments is an inherently subjective judgment, defying bright lines and neutral principles of law. Nevertheless, we can say with certainty that the life sentence approved in <u>Rummel</u> falls on the constitutional side of the line, thereby providing a litmus test for claims of disproportionate punishment in violation of the Eighth Amendment.

<u>Gonzales</u>, 121 F.3d at 943 (footnote omitted).

In this case, petitioner's predicate convictions were for possession of cocaine, a serious crime that, because it furthers illegal drug trafficking, results in high societal costs, and for simple burglary of an automobile. Moreover, petitioner's present habitual offender sentence is imposed with respect to a conviction for aggravated battery, a very serious violent crime.[32]  In light of those facts, and considering the <u>Rummel</u> finding that a life sentence was not excessive when imposed for a *nonviolent* offense where the habitual offender had two prior *nonviolent* offenses, all of which were relatively minor offenses, this Court has no hesitation in concluding that petitioner's life sentence as a third offender under these circumstances, which are considerably more grave, was not grossly disproportionate.  In that the sentence is not grossly disproportionate, this Court's "inquiry is finished." <u>Gonzales</u>, 121 F.3d at 942.  Because petitioner's sentence is not so excessive as to violate the United States Constitution, this claim must fail.

### <u>RECOMMENDATION</u>

Accordingly, **IT IS RECOMMENDED** that the petition for federal *habeas corpus* relief filed by Herbert Smith be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from

---

[32] "Aggravated battery is a battery committed with a dangerous weapon." La.Rev.Stat.Ann. § 14:34.

a failure to object.  <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this ninth day of March, 2007.

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**